UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
FCS ADVISORS, LLC,                                               :
                Plaintiff                             :
                                                                      :           21-cv-06995 (PKC)
          -v.-                                               :
:
THEIA GROUP, INC., d/b/a "THORIAN GROUP"        :         OPINION AND ORDER
and/or "CYPHERIAN";                                              :
THEIA AVIATION, LLC; and                                     :
THEIA HOLDINGS A, INC., d/b/a "THORIAN       :
HOLDINGS,"                                                            :
                Defendants.                          :
-----------------------------------------------------------------X

CASTEL, U.S.D.J.

        Plaintiff FCS Advisors, LLC ("Brevet") moves for appointment of a receiver to oversee defendants Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc. (collectively, "Theia"). For the reasons explained below, the motion is granted.

BACKGROUND

        Theia secured a license from the Federal Communications Commission ("FCC") in May 2019 to build a network of 112 satellites for imaging the entire surface of the Earth. The license requires Theia to launch 56 of the satellites by May 9, 2025. (Compl. ¶ 2.) The FCC license is Theia's largest asset by far. (Id. ¶ 25.)

        Brevet is Theia's largest creditor. In June 2020, the parties entered into a Secured Note Purchase and Security Agreement (the "SNPSA") that refinanced certain prior debt owed to Brevet with two $100 million promissory notes, one due on December 29, 2020, and the other on June 29, 2021. (Id. ¶ 3) The parties agreed to an amendment of the SNPSA (the "Third Amendment") that extended the due date on the first note to June 29, 2021, the same date the

1

second note was due.  (Id. ¶ 4.)  It is undisputed that no payment has been made on either note.  Brevet asserts that with interest and penalties it is owed over $289 million.  (Id. ¶ 1.)

Theia's finances appear to be quickly worsening.  At the October 20, 2021 hearing on the application for the appointment of a receiver, counsel for Theia stated: "There is no company today.  There's no money being spent in any meaningful way. . . . All there really is, is a license and a business plan." (Transcript of Oct. 20, 2021 Hearing at 29.)  Theia's counsel also stated: "we believe the only path for anybody getting their money back is to sell this license, and sale of this license will inevitably require some type of bankruptcy proceeding."  (Id. at 28.)

The Court urged the parties to work out an interim arrangement that would protect Theia's security interest in collateral, which is substantially all of Theia's assets, until a bankruptcy filing.  (Id. at 34-36.)  While the Court made no commitment, entry into such an arrangement may have obviated the need for the Court to rule on the application for a receiver.  The parties have advised that they were unable to come to terms on any interim arrangement.

DISCUSSION

A federal court may appoint a receiver to protect a party's interest in property.  Rule 66, Fed. R. Civ. P.  "The appointment of a receiver is considered to be an extraordinary remedy, and should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property." Rosen v. Siegel, 106 F.3d 28, 34 (2d Cir. 1997) (internal quotation marks and alterations omitted).  However, the Second Circuit has held that when (1) the parties' contract contemplates a receivership in the event of default, and (2) there are multiple defaults, such a contractual provision "strongly supports the appointment of a receiver." Citibank, N.A. v. Byland (CF8) Ltd., 839 F.2d 93, 97 (2d Cir. 1988).  A provision expressly permitting a party to apply for the appointment of a receiver suffices to satisfy the contemplation

of a receiver requirement.  See id. (noting that under the relevant contract provision, the plaintiff "may apply for the appointment of a receiver").  The appointment of a receiver is left to the Court's discretion.

Here, under the SNPSA, "[i]f an Event of Default has occurred and is continuing . . . . [Brevet] is empowered to request the appointment of a receiver from any court of competent jurisdiction."  (Doc 14-2 (SNPSA) § 8(n).)  In other words, the SNPSA, like the mortgage agreement in Citibank, contemplates and permits Brevet's request for receivership in the event of default.

As to the issue of defaults, the parties dispute both the existence and extent of various defaults relating to, among other things, the development and circulation of a Liquidity Plan, the appointment of a Chief Restructuring Officer, and the anti-indebtedness provision.  After reviewing the parties' declarations, exhibits, and oral presentations at the October 20, 2021 hearing, the Court finds that Theia has, at the very least, defaulted on its loan payments due to Brevet on June 29, 2021 under the Series A-1 Secured Promissory Note and the Series A-2 Secured Promissory Note, continuing to owe Brevet at least $289 million.  (Doc 13 at 7 (citing Colon Decl. ¶ 31).)

As noted, Theia's finances have deteriorated quickly.  To give one example, Theia recently submitted in its September 10, 2021 briefing that it "has made meaningful progress over the last two years to design its remote-sensing satellite constellation," and that even after the setbacks of having to "re-confirm" billion-dollar deals with "significant pre-paid contract payments,"[1] Theia convinced one party to "re-sign[] documentation on June 21, 2021 in a deal worth $2 billion, and . . . provide the Company the first tranche of $200 million once

---

[1] It is also unclear to the Court what it means to "re-confirm" agreements for contract payments that were "pre-paid."

3

Theia is in a position to finance the operation of its aircraft." (Doc 46 at 9-10.) But, as noted, counsel for Theia now acknowledges: "There is no company today. There's no money being spent in any meaningful way." (Transcript of Oct. 20, 2021 Hearing at 29.) The FCC license requires that long lead time actions—the launching of 56 satellites successfully into orbit—take place three years from next May. Even if an extension of this deadline could be sought, there is no indication that it would be granted or that the conditions attached to such an extension would not be onerous.

In its written submissions but not in its presentation at the hearing, Theia portrayed Robert Leeds as having defrauded and sabotaged Theia. Because Leeds and his company were retained by both Brevet and Theia, albeit for different assignments and with each other's knowledge, Theia asserted that Leeds's purported misdeeds were for and on behalf of Brevet. (Doc 46.) The evidence, however, demonstrates that (1) Leeds repeatedly emphasized to Theia that he could not speak for Brevet (Docs 58-18, 58-10, 58-20), and (2) the challenged payments made to Leeds or his firm were made by and through the law firm owned by John Gallagher, Theia's own controlling shareholder (Doc 47-21). In any event, as this Court noted during the hearing, alleged wrongdoing by Leeds does not cut against receivership. The receiver, who would report to this Court—not Brevet or Theia—could decide to sue Leeds, Gallagher or any other individual or entity against whom there exists a valid cause of action. Similarly, the appointment of a receiver does not foreclose a decision by the receiver to file for bankruptcy protection. Nor does it preclude the receiver from seeking input from certain advisors recently retained by Theia to help it chart a path forward.

But whatever the best course of action may be for preserving the value of the satellite license at issue, the Court believes that it should not be charted by Theia's present

4

management.  Brevet has demonstrated that (1) there is a probability of success on its underlying claims against Brevet, (2) the appointment is necessary to prevent irreparable injury, i.e. dissipation and impairment of its collateral, (3) other legal remedies are inadequate, (4) the interests of other creditors will be adequately protected by the appointment of a receiver,[2] and (5) the probability of harm to Brevet by denial of appointment would be greater than injury to parties opposing appointment.  Appointment of a receiver is an extraordinary remedy to be applied cautiously.  The Court comfortably concludes that it is necessary in this instance.

Accordingly, for the reasons stated above, the motion for appointment of a receiver is GRANTED.  Subject to the setting of reasonable terms of retention, a receiver will be appointed for each of the defendants, Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc., with the powers set forth in Appendix A attached hereto and subject to further Order of the Court.  Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc. shall not transfer or encumber any of its assets except at the direction of the receiver or pursuant to an order of this Court.  Theia Group, Inc., Theia Aviation LLC, Theia Holdings A, Inc., their officers, directors, employees, controlling shareholders, agents, attorneys, and other persons who are in active concert or participation with any of the foregoing persons shall comply with the Court's Order, cooperate and refrain from interfering with the receiver, and comply with all lawful directions of the receiver.  Failure to do so is punishable as contempt of Court.  The Court has reviewed the qualifications and experience of the two candidate receivers proposed by Brevet and each is acceptable to the Court.  Brevet should open a dialogue with Michael Fuqua

---

[2] Intervenor Aithre Capital Partners, LLC supports the appointment of a receiver.  (Doc 92.)  Three other groups of intervening creditors oppose the appointments: Thomas Courtney Dubar and a company managed by Mr. Dubar, Solar Chaos, LLC  (Doc 93); Kevin C. Griffin, Triple9 LLC, and 19NinetyEight, LLC (Doc 95), and Brant J. Griffin Living Trust U/A Dated 09/26/2012, Brant Griffin Roth IRA #201839105, and the Harvey Lee Griffin Revocable Trust U/D/T Dated 10/30/1989 (Doc 94).  Much proceeds from the assumption that Brevit would have an outsized influence on the decisions of the receiver.  But the receiver is an officer of the Court and reports to it, not to Brevit.  See Citibank, 839 F.2d at 98.

of B. Riley Advisory Services, one of the two candidate receivers, for the purpose of finalizing arrangements and submitting a proposed Order retaining him as receiver. The parties shall report to the Court within fourteen days of this Order as to the status of the receiver's engagement. The Clerk of the Court is directed to terminate the motion. (Doc 12.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
October 29, 2021

## APPENDIX A – POWERS OF RECEIVER

Upon appointment, the Receiver shall have the full powers of an equity receiver and be authorized to undertake the following:

1. Assume full control of Defendants and any affiliates or subsidiaries of Defendants, by removing any officer, independent contractor, employee, or agent of Defendants from control and management of the affairs of the same;

2. Take exclusive custody, control, and possession of all the funds, property, mail and other assets of, in the possession of, or under the control of the Defendants, wherever situated. The Receiver shall have full power to sue for, collect, receive and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, books, records, work papers, and records of accounts, including computer-maintained information, and other papers and documents of the Defendants, including documents related to customers or clients whose interests are now held by or under the direction, possession, custody or control of the Defendants. The Receiver shall have discretion to determine that certain property or other assets of the Defendants shall be under the Receiver's control, but shall remain in the possession or custody of the Defendants;

3. Seek a bona fide purchaser of Defendants' FCC License Assets, as defined in the parties' Secured Note Purchase and Security Agreement, as well as to seek from the Federal Communications Commission and every other applicable government authority an involuntary transfer of control of such FCC License Assets and to take all steps necessary to effectuate a transfer or sale of the assets;

4. Take all steps necessary to secure the business premises of the Defendants and any and all other premises under the control of the Defendants;

5. Preserve, hold and manage all receivership assets, and perform all acts necessary to preserve the value of those assets, in order to prevent any loss, damage or injury to customers or clients (including contacting current and former employees, vendors or strategic partners or authorizing others to do so);

6. Prevent the withdrawal or misapplication of funds entrusted to the Defendants;

7. Manage and administer the Defendants by performing all acts incidental thereto that the Receiver deems appropriate, including hiring or dismissing any and all personnel or suspending operations;

8. Collect all money owed to the Plaintiff;

9. Initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in state, federal or foreign court necessary to preserve or increase the assets of the Defendants or to carry out his or her duties pursuant to this Order;

10. Choose, engage and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

11. Open one or more bank accounts as designated depositories for funds of the Defendants. The Receiver shall deposit all funds of the Defendants in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts;

12. Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Defendants prior to the date of entry of this Order, except for payments that the Receiver deems necessary or advisable to secure assets of the Defendants; and

13. Such other powers as the Court may grant upon request from the Receiver.