**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| v. | ) | **Case No. 25-cr-69-RCL** |
| | ) | |
| **STEPHEN BUSCHER,** | ) | |
| | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |
| | ) | |

**DEFENDANT STEPHEN BUSCHER'S
EMERGENCY MOTION TO PRESERVE DIGITAL EVIDENCE**

Defendant Stephen Buscher, through undersigned counsel, respectfully moves this Court on an emergency and expedited basis for an Order preserving twenty-three terabytes of forensic evidence seized by the Government from Defendant Erlend Olson and Theia Group, Inc. ("Theia"). The Government proposes to transfer the evidence seized from Theia to a third party, and to delete all of the evidence from Government servers. Government's Notice of Return of Digital Evidence (April 15, 2026) (ECF No. 110) ("Notice of Return").

The charges in this case stem from the operations of Theia and from Defendant Buscher's interactions with the other defendants, including Mr. Olson. Accordingly, there can be no doubt that data concerning those operations and communications are critical to Defendant Buscher's ability to defend himself. Nonetheless, on April 17, 2026, in response to Defendant Buscher's request that this data be preserved, the Government stated that it intends to delete all of this evidence from its own computer system, and to transfer the data seized from Theia to Brevet Capital/LTS ("Brevet"), a former creditor of Theia. The twenty-three terabytes of seized evidence

1

at issue has been in the Government's custody for nearly five years.  The Government has held the evidence, and failed to review it, through several years of grand jury investigations, through the return of an indictment and thirteen months of pretrial litigation.  And the Government has twice represented to this Court that at least some of the data will be produced to the defendants.

In response to Defendant Buscher's requests, the Government has agreed only to a "short delay" in its plans to delete and transfer the evidence.  Defendant Buscher respectfully requests that this Court enter an immediate temporary order preserving all existing forensic images and halting any further transfer or deletion pending full briefing and resolution of the issues raised by the Government's proposed course of action, set a shortened briefing schedule, and set a hearing on an expedited basis.

## I.    STATEMENT OF FACTS

### A.    Search Warrants and Five Years of No-Review.

On June 30, 2021, the Government executed simultaneous search warrants at Defendant Olson's Albuquerque, New Mexico residence (Case No. 21-mr-860) and at Theia's Washington, D.C. headquarters (Case No. 21-sw-185). The Government did not search Theia's operational headquarters in Albuquerque, which held some servers at the time.   Law enforcement forensically imaged 16 devices from the residence and 26 devices from Theia's headquarters, retaining approximately 23 terabytes of forensic images. Notice of Return. ECF No. 110 at 1-2. The Government held those images in continuous physical custody − stored by IRS Criminal Investigation − for nearly five years, but the images were never reviewed, processed, filtered, or searched. Notice of Return. ECF No. 110 at 2-3.

**B.    The Government's Flawed Production and Defendants' Efforts to Obtain Data From the Theia Servers.**

After seizing the data from Theia via search warrant, and after Theia was placed into receivership, the Government served subpoenas on Theia's receiver.  The material obtained from the receiver was produced by the Government in discovery, but a significant number of documents in that production were corrupted and inaccessible to the defendants.  Undersigned counsel has raised with the Government on multiple occasions the corrupted state of the Theia production as well as the status of the Theia servers on which the uncorrupted versions of the documents presumably reside.  However, the Government has declined defendants' requests to obtain a corrected production from Theia or provide the whereabouts of the Theia servers.

Undersigned counsel has also raised on multiple occasions with this Court the corrupted state of the Theia production and the whereabouts of the Theia servers.  At the March 18, 2026 status conference, the Government represented that it did not know where the servers were, and that the Government had not seized them.  As to the corrupted files, the Government represented that it had issued a subpoena to the receiver, and the receiver had responded that it had produced all responsive materials in its possession.

But despite telling the Court that it did not know the location of the Theia servers, the Government now intends to transfer and then delete the data that came from those servers.  Exhibit 2 to the Government's Notice of Return (ECF No. 110  contains three documents filed together: the Government's April 13, 2026 letter to Brevet; the Government's April 14, 2026 correction of that letter; and Attachment A, the list of 26 Theia devices from which data was seized. ECF No. 110-2. The April 13 letter represented that the physical devices seized from Theia's headquarters had been "imaged on premises and left on premises" in 2021. ECF No. 110-2 at 2. The April 14 letter corrected that representation, stating that "nine items from Suite 800 and all items from Suite

600 were removed from the premises for imaging and were not returned to Theia." ECF No. 110-2 at 4.

Attachment A to the Notice of Return identifies the items that were removed from Suite 600 and never returned. They include two HP 300 GB hard drives from the Server Room and an Ideal Star Server from the Server Room containing five separate hard drives labeled D, E, F, G, and OS. ECF No. 110-2 at 6. The Ideal Star Server and its five drives are listed as a single line item but represent five distinct storage units. This server room equipment has been in the Government's physical custody since June 2021. The schedule in the exhibit identifies where each server was physically located but not whether it was in operation, or whether it contained any back up data.

The Government's representation to this Court that it did not know where Theia's servers were, and that the Government had not seized them, appears to be inconsistent with Exhibit 2, which indicates that server-room equipment from Theia's Suite 600 Server Room, removed from the premises in June 2021, has been in Government custody throughout this prosecution. The equipment identified in Exhibit 2 is either the same equipment whose location the Government told this Court on March 18 it did not know, or different equipment whose existence the Government did not learn of until recently.

To further highlight the Government's apparent confusion about which Theia servers it has in its possession, undersigned counsel believes that there are additional Theia servers which the Government has not secured. After the June 30, 2021 searches, then-counsel for defendant Buscher advised the Government that additional Theia servers had been relocated to New Mexico prior to the searches. On April 18, 2026 (three days after the Government filed the Notice of Return), co-defendant Olson filed a Motion to Reconsider Detention Order (April 18, 1016) (ECF

No. 112), which identifies "data from Theia's servers in multiple locations, including the District of Columbia and New Mexico" as part of the Rule 16 discovery universe in this case. ECF No. 112 at 6.  The Government's Notice of Return and its exhibits address only the District of Columbia materials. The Government obtained no warrant for any Theia location in New Mexico, conducted no search of any Theia location in New Mexico, and has placed no record before this Court of what Theia servers existed there, whether they still exist, or in whose custody they now reside.

**C.      The Government's Representations to This Court Regarding the 7.5 Terabytes.**

At the January 8, 2026 status conference, the Government represented to this Court that it would produce approximately 7.5 terabytes of Olson warrant materials as part of its discovery compliance.  At the March 18, 2026 status conference, the Government disclosed for the first time that it did not intend to review those materials for *Brady* content before producing them, that it would not use those materials in its case, and that it was ready for trial, a position over which all defense counsel disagreed given the need to review the 7.5 terabytes.

Fifteen days later, on April 2, 2026, the Government took an entirely contrary tack. Without producing the Olson warrant materials to any other defendant, it returned the forensic images from Olson's 16 devices to Olson's counsel. Notice of Return. ECF No. 110 at 3.  The Government did not inform the other defendants or this Court of the reversal.  It filed no motion. It sought no leave. It then waited an additional thirteen days before notifying this Court, and did so by Notice of Return rather than by motion. ECF No. 110 at 1.  As of the filing of this motion, the 7.5 terabytes have not been produced to the other defendants.

**D.      The April 15, 2026 Notice.**

The Government's Notice of Return  disclosed the April 2 return of Olson's materials and announced that the forensic images of Theia's 26 devices seized from Theia's offices in 2021 will be "returned" to Brevet "imminently," following which the Government will "remove all the data from government data systems." ECF No. 110 at 1. What the Notice calls a "return" is in fact a transfer:  Brevet is not Theia.  Brevet is a former Theia creditor whom the Government has identified as a victim in this prosecution, and whose claims against Theia were adjudicated in the federal receivership, which was ordered to terminate on July 31, 2025 and whose underlying case was formally closed on January 29, 2026. The Government further states that it "has determined not to review or use any of the unreviewed data in its case." Id. at 3. And then, it states, without Court approval nor any opportunity for defendants to be heard, it will permanently delete 23 terabytes of evidence in a pending prosecution.

**E.      The Government's April 17, 2026 Response to Defendant's Preservation Request.**

On April 16, 2026, defendant Buscher, through counsel, made a written demand for preservation of all digital evidence referenced in ECF No. 110 and all copies on Government systems. Ex. A. On April 17, 2026, Government counsel agreed to "a short delay" of the transfer to Brevet and confirmed that it retains its copy of the Olson forensic images and that counsel for Olson has confirmed he will not destroy his copy. The Government stated that "it remains our position that we are not in lawful possession, custody, or control of this data" and that it "do[es] need to remove all copies from government systems in short order." The Government did not agree to preserve the materials, did not agree to conduct a *Brady* review, and did not address the

inconsistency between its March 18 representation and Exhibit 2. It agreed only to a temporary delay while reserving the right to delete the evidence on its own schedule. Ex. B.

### A.  ARGUMENT

The Government's April 2, 2026 return of data to defendant Olson, its proposed "return" of data to Brevet, and its proposed destruction of twenty-three terabytes of seized digital evidence, have violated, or would violate, duties imposed independently by *Brady v. Maryland,* 373 U.S. 83 (1963), *California v. Trombetta,* 467 U.S. 479 (1984), *Arizona v. Youngblood*, 488 U.S. 51 (1988), and Federal Rule of Criminal Procedure 16(a)(1)(E).   This Court should enter an immediate temporary order preserving all existing forensic images and halting any further transfer or deletion pending full briefing and resolution of the issues raised by the Government's proposed course of action.  The Court should also set a shortened briefing schedule, and an expedited hearing, on those issues.

### A.      The Government's Actions are Prohibited by *Brady v. Maryland,* 373 U.S. 83 (1963).

In *Brady,* the Court held that **"the suppression by the prosecution of evidence favorable to** an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87.  The Court went on to hold that this duty arises "irrespective of the good faith or bad faith of the prosecution," because the obligation "is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused." *Id.*  The Court continued:

> Society wins not only when the guilty are convicted, but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. … A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a

> trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice, even though, as in the present case, his action is not "the result of guile."

*Id.* at 87-88. Thus, the obligation imposed by *Brady* is not subject to decisions made by prosecutors. Simply put, when the government is in possession of potentially exculpatory evidence, it must produce it to the defendants – full stop.

Moreover, the Supreme Court has held that "[t]he individual prosecutor has a *duty to learn* of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley,* 514 U.S. 419, 437 (1995) (emphasis added). The test under *Brady "*is an objective one," and "the rule is framed in a way that permits its application to facts of which the prosecutors are ignorant." *United States v. Brooks,* 966 F.2d 1500, 1502 (D.C. Cir. 1992) ("[A] prosecutor's office cannot get around *Brady* by keeping itself in ignorance, or compartmentalizing information about different aspects of a case." *Id*. (quoting *Carey v. Duckworth,* 738 F.2d 875, 878 (7th Cir. 1984)). The Government cannot, as it now seeks to do, short-circuit *Brady* in exactly that manner.

The Government's assertion that it "located" this evidence "in or around January 2026" – as though the data suddenly appeared in its possession – does not alter its obligations under *Brady.* A government that discovers – after repeated defense requests – evidence in its own custody may not avoid its *Brady* obligations by destroying, deleting, or returning that evidence. Its possession of that evidence triggers a constitutional duty that cannot be discharged by dispossessing itself of the evidence. Indeed, the government's statement that it only became aware of this evidence in January, and that prior to that it was held by IRS Criminal Investigation, misconstrues its duty under *Brady,* which extends to evidence held by agencies that are "closely aligned with the prosecution." *Brooks,* 966 F.2d at 1503; *see also United States v. Safavian,* 233 F.R.D. 12, 16

8

(D.D.C. 2005) (*Brady* reaches "any information in the possession of the government—broadly defined to include all Executive Branch agencies—that relates to guilt or punishment"). The charges against the defendants include tax charges, and IRS Criminal Investigation, the agency that executed the warrants, stored the forensic images, and assigned the lead investigative agent in this prosecution, is precisely such an agency.[1]

In sum, a *Brady* obligation that reaches all information in Executive Branch custody cannot be satisfied by a five-year decision not to look, followed by a return made thirteen months after Indictment and after twice representing to this Court that the materials would be produced to defendants. A government that discovers evidence in its own custody during pending litigation and then immediately seeks to return and delete it rather than review it has not discharged its *Brady* obligations.

## B. The Government's Actions are Prohibited by *California v. Trombetta,* 467 U.S. 479 (1984) and *Arizona v. Youngblood,* 488 U.S. 51 (1988).

The Government does not propose merely to "return" evidence to Brevet (already having done so to Defendant Olson). Rather, it proposes to "remove all the data from government data systems" – *i.e.*, to destroy it. But in *California v. Trombetta,* 467 U.S. 479, 488-89 (1984), the Supreme Court held that the Government has a duty to preserve evidence that "might be expected

---

[1] The Government's characterization of the seized materials as tax warrant evidence belonging to a separate investigation does not determine their *Brady* significance in this prosecution. A prosecutor's office cannot get around Brady by "compartmentalizing information about different aspects of a case." *Carey v. Duckworth,* 738 F.2d 875, 878 (7th Cir. 1984); *United States v. Brooks,* 966 F.2d 1500, 1503 (D.C. Cir. 1992). The tax warrant materials and the wire fraud prosecution are part of the same case. The materials seized from Defendant Olson's residence and Theia's headquarters likely contain communications and financial records relevant to the alleged scheme that is the subject of every count against Defendant Buscher.

to play a significant role in the suspect's defense," and that is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."

The Indictment claims that false and fabricated documents lie at the heart of an alleged complex fraud-conspiracy.  Establishing who created, authorized, signed, transmitted and knew about such documents is essential to Defendant Buscher's defense. Not only was the production from the Theia receiver corrupted, it was produced without metadata necessary to provide that information.  Evidence of the documents' creation, transmission and use is not available to the defense by any other means. With the receiver's production corrupted, the forensic images and the server-room equipment identified in Exhibit 2 may be the only source of Theia's business records in a reliable state with intact metadata.

In *Arizona v. Youngblood,* 488 U.S. 51, 58 (1988), the Court held that even where the exculpatory value of evidence is not apparent at the time of destruction, destruction nonetheless violates due process when the government acts in bad faith.  Should the Government delete the data as stated in its Notice of Return without seeking approval from this Court, it will certainly be acting in bad faith. On January 8, 2026, the Government represented to the Court that it would produce at least some of the 23 terabytes of data.  It reaffirmed that commitment on March 18, 2026, but then fifteen days later "returned" some of the data to Defendant Olson.  It then waited thirteen additional days to inform this Court and the defendants of that return, and of its plan to "return" the remaining data to Brevet and then destroy its own copies of both sets of data.  Now two defendants have identified in writing that the materials are likely to contain exculpatory content and have formally demanded preservation. A government that is on actual notice that materials it holds are likely to contain *Brady* content, and then proceeds to delete those materials in the face of that demand, acts in bad faith.

C.      **The Government's Actions are Barred by Federal Rule of Criminal Procedure 16(a)(1)(E).**

Rule 16(a)(1)(E) requires the government to permit defendants to inspect documents and objects in the government's possession, custody, or control if they are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i), (iii). The 23 terabytes seized from Defendant Olson and Theia is certainly material to preparing the defense in this conspiracy prosecution. The Olson data consists of documents and electronic communications of a co-defendant whose conduct is at the center of every count charged against Defendant Buscher. The Theia devices were obtained from Defendant Buscher's place of employment during the period of charged conduct.

D.      **The Court, Not the Government, Must Determine to Whom the Theia Seized Evidence Belongs.**

The Government's intended transfer of Theia's seized digital devices and images to Brevet raises a threshold question this Court must answer: did the Government correctly determine that Brevet is the party entitled to receive property seized from Theia's premises? Brevet itself never held direct custodial authority over Theia's assets; whatever authority Brevet ever had over Theia's property derived from a federal receivership that was formally closed on January 29, 2026. The question of who is entitled to receive Theia's seized property is a legal determination that should be made by this Court, not the Government.

E.      **The Court Should Require Preservation and Review.**

This Court has inherent authority to manage the proceedings before it, including the authority to require preservation of evidence and to prevent the unilateral disposal of materials subject to the Court's jurisdiction in an active criminal case. *Chambers v. NASCO, Inc.*, 501 U.S.

11

32, 43 (1991) ("certain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others"); *Cobell v. Babbitt*, 37 F. Supp. 2d 6, 15 (D.D.C. 1999) (inherent power "enables courts to protect their institutional integrity and to guard against abuses of the judicial process with . . . such other orders and sanctions as they find necessary").

The irreparable harm from inaction here is not speculative. The Government has said it will act "in short order" while simultaneously asserting it is prepared to proceed to trial.  The Theia materials have not yet been delivered to Brevet's counsel. If the Court does not act, a large amount of potentially exculpatory evidence may be permanently beyond the reach of every defendant in this prosecution. A *Brady* review the Government could have completed at any point in five years can still be accomplished. Such a review would be impossible if the evidence were returned and government copies deleted, thus depriving defendants of material that may be critical to their defense.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Buscher respectfully requests that this Court enter an Order requiring the Government to preserve all existing devices and forensic images from the Olson and Theia seizures and halting any further transfer, delivery, or deletion of any portion of the 23 terabytes pending full briefing and resolution of the issues raised by the Government's proposed handling of that evidence, and setting a shortened briefing schedule and a hearing on an expedited basis.

Respectfully submitted,

Whitney Ellerman
Ellerman Enzinna Levy PLLC
Bar No. 420486
1050 30th Street, N.W.
Washington, DC 20007
+1 202.753.5553 (o)
+1 202.415.1543 (c)
wellerman@eellaw.com

*Counsel for Defendant Stephen Buscher*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on April 27, 2026, a copy of the foregoing Defendant Buscher's Emergency Motion to Preserve Digital Evidence was filed using the CM/ECF system, which will then send notification of such filing to all counsel of record.

Dated:   April 27, 2026                    Respectfully submitted,


Whitney C. Ellerman (D.C. Bar No. 420486)
Ellerman Enzinna Levy PLLC
1050 30th Street, NW
Washington, DC 20007
202.753.5553
wellerman@eellaw.com

*Counsel for Defendant Stephen Buscher*

14